at all. Argument not to exceed 15 minutes per side. Mr. Aguiar, you may proceed for the appellate. Good morning. Good morning. May it please the court, my name is Sam Aguiar and I'm here with my partner John Holland and we're here on behalf of Praline Breed who is actually the, I know it might be confusing, but he's actually the intervening plaintiff in this action. We understand. Great. Well, let's get to the point here. So, we've got an opinion from the district court that essentially concludes U.S. Marshall had these policies that he had to abide by and they gave him discretion to engage in a pursuit, continue the pursuit, and as a result of that, court lacked subject matter jurisdiction because an FTCA exception applied. But what the court didn't do and declined to do was go through the entire discretionary function analysis. What I'm not going to do here today is go through that policy word by word for the sake of today. Maybe there's discretion there to initiate, continue. But it is a ministerial function for an officer in that situation to also follow state driving laws. And what we outlined in our brief in the operative complaint is that in Kentucky, you've got emergency driving regulations which do provide exemptions for these officers to operate above speeds in pursuits in certain circumstances, go through lights, things like that. But it does not negate their duty, their statutory obligation to drive with due regard for the safety of all persons and property upon the highway. And that is a fixed prescribed duty by statute that is not discretionary. It entails no element of decision-making. You have to drive with due regard in Kentucky. In 2019, Kentucky Supreme Court made it clear, you know, that an officer can be the cause in fact and legal cause of damages inflicted upon a third party as a result of a negligent pursuit. Duty of care owed by the officers is that of due regard in accordance with KRS 189.940. It looks like this is an issue that's been brought up across the country several times in state and federal district courts. Couldn't find any appellate court opinions. But in each time, the court goes straight to the state law. It's what you do under the Tort Claims Act. And in each one of those situations, if there's a due regard provision, then there's a viable negligence action. Okay, counsel, I thought your argument was that the pursuit policies of the marshal service were not followed here. I didn't know that you were talking about Kentucky law, vehicle code. I was listening closely this morning when you said you wanted us to bring our best and most salient arguments up here. So when I look at that pursuit policy, I've had several pursuit cases. I can understand the positions. I'll submit on the briefing as it relates to that where something's discretionary versus ministerial. But really, you know, this comes down to Federal Tort Claims Act. You know, it's U.S. Supreme Court law that, you know, an action exists at the state in which the alleged misconduct would permit a cause of action for that misconduct to go forward. It's U.S. Supreme Court law that conduct isn't discretionary if it's controlled by mandatory statutes or regulations. And that's what I'm going by. We've got a mandatory statute right here. Okay, but you're talking about the vehicle code statutes right now? Emergency driving regulations. Okay, but how about the policy of the marshal service? What is the violation, if any, of that here? Well, I think the briefing goes into that and I think that the issue with the policy is that, as it relates to the specific facts of the situation, is that we've got authorization to initiate a pursuit of somebody who you believe is either a violent felon or going to commit a felony. What we've cited is the fact that this was a parole violation for absconding that was a long-standing history of him not getting in trouble with the law and that the language, you know, the only reasonable interpretation of the language would be that he's, that he doesn't meet the definition of a felon or somebody who's about to commit a felony. Well, does the statute even say a felon or somebody about to commit a felony? I thought it said, has or is about to commit a crime involving death or serious injury. A violent felony or violent felon or things along those lines, but I don't think that's a statute. I think that's the policy that we're going by there. Sorry, if I called it a statute that was on me, but the policy says that before initiating a high risk vehicle pursuit, the officer must reasonably believe that the driver has committed or is about to commit a crime involving serious injury or death. So I thought that your argument was focused on that. Now you're telling me that the argument is based on having to have due regard for the safety of others under Kentucky law. So wouldn't that also be a discretionary function? I mean, due regard for the state for the safety of others seems a lot like a judgment call. Well, it may seem like a judgment call, but the courts that have interpreted due regard statutes say that because it is statutory, because it's a mandate, because it's something that you can be cited for, that it is ministerial function. It is Minnesota, Colorado, Arizona and Kentucky. Those other ones are federal district court opinions. In other words, the United States cannot invoke the discretionary function exception to the Federal Towards Claims Act because the officer has no judgment, discretion to decide whether his driving is reasonably safe. I mean, isn't that the standard, due regard for the safety of others? He has the obligation to comply with state driving laws. Even the United States Marshal's own policy provides Deputy U.S. Marshals with information on state and local pot laws that regulate the use of emergency vehicles. Including the speed limit? Excuse me, I'm sorry. Including the speed limit? No, they have... Right. The emergency driving regulations within Kentucky allow you to exceed the speed limit. They allow you to run through red lights, but they do so under the caveat that you are never relieved of your obligation to drive with due regard for the safety of the public. Okay, so... Why isn't that in and of itself something that would require the exercise of judgment and discretion? Because for conduct to be discretionary, it cannot be controlled by statutes and that statutory law right there. But the... I understand, I think I understand the court's position and the concern, and I get it, that inherently within language like that, it sounds like it exercises some judgment and discretion. The statute says you've got to be careful. Got to be careful. Right. But the statute doesn't say, and by the way, being careful means exactly these things. It does not. So why isn't it exercise of judgment and discretion for the officer to figure out what it means to be careful in this circumstance? In the context of, again, I can't speak for the legislative intent in crafting that language. It's typical, common throughout the country. And I'd be lying to you if I sat here and just looked you in the eye and said it's obvious what that statute means. Our position, for the sake of this, is that policies, such as the pursuit policies, they have wiggle room.  Discretion. Plenty of language like that in here. But what the United States Supreme Court law says is that you don't have discretion when there are statutes in place. And this is a statute. So what if the statute, I'm sorry, what statutes are we talking about now? The statute that we're talking about right now is KRS 189.940. What's Carol's driving statute, reckless driving, what's that? So KRS 189.910 to 950 are the emergency driving exemptions. Okay, is that cited in your brief? It's cited in the brief to the district court. But no, but in your brief to us. I have your appellate brief in front of me. You have two issues. You have an issue, one, is that the marshal's service policies were violated and therefore there is no discretion here. Your second issue is strong public policy consideration must also guide the conduct of law enforcement officers and that's just kind of a general public policy argument. I don't see you raising any Kentucky statutes that were violated on appeal. More specifically, you cited two United States Code statutes, but there's no citation to a Kentucky statute in your brief that I've seen. I think it cites Gonzales v. Johnson, which is the case that interprets the statute, but no, the court's correct there. So if you raised this claim, maybe you raised the claim in the district court, but if you did not raise it here as well, that argument is forfeited. Like the United States didn't have a chance to respond to that. We didn't prepare for argument on that ground. So that's not your best claim right now. So what would be? If we were to throw all that away, then the argument would be, again, that under these policies that U.S. marshals are bound by, that they are subject to a discretionary function test. The first test is that it can't be set forth by the policies, and obviously we've set forth the language within the policies that we do think is ministerial versus discretionary. And then the second would be that it's a two-part test, and the exercise of discretion must be the kind of function that the exception was designed to shield. And in that particular argument right there, that's all general, but you don't have a specific part of the policies that you claim was violated. I thought you did in your brief. We did. You're kind of abandoning it on oral argument. Well, I don't think we're abandoning it. I think what I said is the court can just submit on that. We can do what? It's incorporated into the briefs, so it's not being abandoned. But again, with ten minutes to play with here, I wanted to make sure that we got to what was most salient, at least as far as what... All right. All right. Well, you're out. You'll have your five-minute rebuttal. You can either use it now or you can use it later. Let's just finish it up now. The other thing, when we go to that part two of the discretionary review test right there, is that the precedents were established also that the operation of a motor vehicle in and of itself is not a discretionary function. I think the court's well aware of that. That's a 70-year-old precedent. They actually state that the safe operation of a motor vehicle was even something cited by Congress when they enacted the legislation. So again, right here, if we're going to say that it's discretionary to initiate a pursuit or determine whether or not somebody constitutes a violent criminal... Why do you keep saying violent criminal? I'm trying to go back to the language that you... But that's not what the language is. So as I understood the argument that there are policies that the U.S. Marshals have to follow, if they've violated some mandatory portion of that policy, then they're not engaged in a discretionary function. The language of the policy says that before they initiate a high-risk vehicle pursuit, the officer must reasonably believe that the driver has committed a crime involving serious injury or death. Do you think... Maybe it's your position. A crime involving serious injury or death is just a violent felony? No. No. I apologize. I was trying to navigate right here through the pursuit policy. No. I mean, the language is what it is. And certainly, maybe I was actually giving a little bit more of a pass to this officer right here, but we don't think that there's been anything that's presented that establishes... First of all, that's ministerial. You have to believe that, and you have to have good information for it, and there's nothing been put forth that suggests that. The policy also states that the vehicle's operators must obey all traffic laws unless they're compelled to deviate during emergency situations. What we've alleged in this action is that speeds got up to over 100 miles an hour in one of the most congested, heavily trafficked pedestrian areas and traffic areas in the city. Certainly, you know, it's our position that that right there does not give you discretion. Clark Blanche, you can just drive 100 miles an hour anywhere you want. There's issues of fact in this case that have come up that have not been reconciled as to whether or not emergency equipment was activated. According to these policies right here, emergency equipment has to be activated. Okay, the, Mr. Spaulding has submitted two affidavits in this case. Do you concede that putting the two affidavits together shows that he complied with the policies? What I can see from that is that, according to him, he made a right-hand turn onto the street where the traffic, you know, the bad wreck ended up happening. He states that he... Answer my question, yes or no, if you can. No. No. Okay. And then what is deficient in the affidavits then? What's deficient in the affidavits, he says he turns off his equipment that he decided to terminate and that he radioed it. But I guess if we're going by the four corners of that, you know, then there was no pursuit at the time, going on at the time the accident happened. But as we raised, at least in the complaint and the initial brief, was that we've literally got video footage of the vast majority of this chase and we've got a witness statement and those don't reconcile with what he has said. Okay. And that's the sum and substance of your answer to my question? Yes, your honor. Okay. All right. But I guess I'm not sure how that maps onto the discretionary function exception. Sure. So he's got a ministerial requirement under his policy to continue his pursuit with lights and sirens activated at all times. So if this is a situation where ultimately the pursuit keeps going and you've got him chasing without lights and sirens on, then that is a violation of a ministerial obligation. You're saying that it isn't the case that he stopped the pursuit and turned off his lights and sirens at that point? That's correct, your honor. I wouldn't, we wouldn't be here with this action if he stopped the pursuit. Does your opening brief make this point about the lights and the sirens in the video? Can you tell me where? I can't tell you where, your honor. I apologize. But, but you... I can't tell you right now. But it does? I can tell you that it goes into the policies. I can't tell you 100% right now if it goes into that specific violation. Because again, if you made this claim in another court but didn't make it here, then that's really not before us. Now maybe it's in here. I don't remember seeing it, but... So if your answer to Judge Griffin that the deficiency in the affidavit submitted by Officer Spaulding is that it conflicts with the video with respect to the lights and sirens, that the mandatory part of the policy he didn't follow was the lights and sirens part, but you didn't argue that in this court. I mean, we'll read this brief again, but... I mean, again, when I looked at the trial court's order, you know, it seemed like it was a facial attack, not a factual attack, so now I'm trying to throw out the factual information for context because I was asked about the facts as alleged in the declaration, but I wasn't anticipating that, so I apologize. Counsel, you're out of time. Any further questions, Judge Batchelder? No. All right. Well, thank you all. All right. Thank you. Good morning. Good morning. May it please the Court, Sarah Clark for the United States. First of all, the case has changed considerably since I read the briefs again last night, and I appreciate you coming from D.C., and I requested oral argument on this, and I'll tell you what my concerns were at the time, not necessarily anymore, but my concerns were that Spaulding's affidavits did not match up with the policy directives and that the policy directives have to be fouled for it to be a discretionary action, and the policy directive D.3 provides that the high-risk vehicle pursuit can be initiated only if the subject has committed or is about to commit a crime involving death or serious injury. Spaulding's affidavit, however, paragraph 6, says that I believe that Robinson had committed felony crimes of violence that included the threat of death and serious injury, and that it was likely that he would do it again in the future. Well, the threat of death and serious injury is different than has committed or is about to commit a crime involving death or serious injury. Would you agree with me that at least technically that's a difference? Well, my first point is that it says threat of death, and then I think serious injury can fairly be read as separate. It says threat of death and serious injury. Felony crimes of violence that included, so one would be threat of death and one would be serious injury, but I just want to take a step back, a couple of steps back, and point I'm sorry, Ms. Clark. So what you're saying is we should read the officer's affidavit to say I reasonably believed that he had committed a crime involving the threat of death or involving serious injury. I think Officer Spaulding's declarations make clear that he did reasonably believe that Daryl Robinson had committed a crime involving serious injury. That's not what it says, though. I mean, if he had said that, he would be fine, I think. Well, I think his declarations taken as a whole make that very clear, but again, I want to point out plaintiff has not made this argument. Plaintiff's argument is that the crimes were too old, essentially, or that the parole had sort of wiped them out. Obviously, everything else is waived. So for one, plaintiff hasn't made that argument. I also want to point out that the policy doesn't define serious injury. It leaves it to whether the officer reasonably believes that the person has committed such a crime and committed, not convicted. I know, but actions that create threats are much different than actually crimes that are committed involving death and serious injury. I mean, a threat, that's a much lower standard, that's all. But anyway, I think maybe your best argument is that if those arguments had merit, they've been abandoned. Well, they certainly have been abandoned and waived, yes, your honor. And then the other, I'm just telling you why I had you come to Cincinnati, welcome to Cincinnati, by the way. I hope you enjoy our town. The other thing is, I thought the second affidavit, the issue was whether he considered all the policy directives before he pursued Mr. Breed, or no, pursued the fleeing felon, I know Breed's the injured party here, but Robinson, okay. I thought his second affidavit was conclusory and was not specific as to this case, that he says that paragraph two, in accordance with the policy directives and my training, I consider the factors identified in policy directives before deciding whether to engage in a high speed pursuit of a fleeing fugitive. He doesn't, that's a generalized conclusory statement that is not specific as to Robinson, that this specific action here, that I did it here, rather he's just saying, I do it, I guess, in general, and I was wondering if that was sufficient or not, but they also didn't argue that as well. Yes, it's certainly sufficient. I don't think there's any functional difference here, whether he says, this is what I do when I decide, versus this is what I did in this. I always, it is, this is my custom and practice, that would be a little different than saying, I did it here. I think the import of that declaration is clear that this is what he did here, because this is what he does before he decides when he... He does every time, and then that's kind of hard to believe that every time that I, of course, I comply with all policies. It's really kind of conclusory, rather than factual, and I'm not sure that it's a real good affidavit if it just states conclusions. Well, I think it's plainly sufficient here, and I think even without that, it's obvious that the discretionary function exception applies here, because the inquiry asks whether the judgment in question involves an element of judgment or choice. And the fact that the policy identifies these factors to consider underscores that that is precisely the nature of the judgment at issue here. Officer Spalding provided the sort of extra testimony to say, yes, this is what I consider it. And of course, every time before he decides to pursue a fleeing fugitive, but again, plaintiff obviously hasn't come forward with any reason to doubt that. I mean, their complaint doesn't make any allegations about that, certainly. And so there's really no argument here, and I don't think it's necessary or consistent with the purposes of the discretionary function exception to sort of parse through and give Officer Spalding's declaration the sort of least favorable reading possible, when this is plainly the kind of judgment that Congress wanted to protect. How about the district court opinion, though? I don't think the district court opinion applied or cited the policy accurately, and therefore may have been erroneous in applying it. I think the district court said that the parolee had engaged in violent acts before, was considered armed and dangerous, and therefore high-speed chase is authorized under the policy because he's armed and dangerous and that he has done other violent felonies. Well, that's not what the policy says. The policy says that it has to be a, has committed or is about to commit a crime involving death or serious injury. So what do you make of the argument, well, the former argument, I think, that the district court just applied the wrong standard here, and therefore we should remand for the district court to apply the right standard, since it appears that he misunderstood what the policy said. No, well, I don't think the district court misunderstood what the policy said. I don't think plaintiff has argued that either. I think what plaintiff argues is that essentially the district court should have engaged maybe in further weighing of the factors identified by the policy, or should have determined, you know, that Robinson's crimes, which plaintiffs don't dispute, were somehow not serious enough. But the court had... Serious enough. I mean, a serious crime is not enough for the policy, right? I mean, the policy, I mean, it really talks about, I mean, the threat of death or serious injury. Well, a crime involving death or serious injury.  And it's very, very restrictive. Well, I disagree with that, but even within that specific portion of the directive, it's still contemplates that the officer will be exercising his judgment in determining whether there has been such a crime that would support pursuit. And of course, even then, the officer doesn't have to pursue the person, but that's one of the predicates. Does the judgment come in interpreting the word involving? So the policy does not say that the officer must believe that the occupant of the vehicle has committed a crime that resulted in serious injury or death. It just has to involve serious injury or death. So if you threatened injury, like by armed robbery, that seems like a threat of injury or maybe even a threat of death, could that be a crime involving and as a matter of interpreting the policy and could the officer have discretion since involving isn't defined in coming to that conclusion? Yes, Your Honor. I think that's very reasonable. I think involving is one of the many areas, even in that part portion of the directive, that contemplates the exercise of judgment on the part of the law enforcement officer in determining whether pursuit is permitted and, of course, then whether they will actually pursue the fugitive. So if the policy had said, commit a crime resulting in serious injury or death, then maybe the officer would not have discretion because either somebody was seriously injured and the broken nose or hurt nose probably isn't that, and nobody died. But it doesn't say resulting in. It says involving and that in and of itself, deciding what that means involves an exercise of discretion. Yes, Your Honor. I think that's certainly correct. And what is the part played by the use of the word reasonably? I think there, too, it contemplates that the officer, one, will be exercising judgment and, two, will be operating on the facts available to that officer. I mean, it's not surprising that the directive didn't want to impose the additional strict limit on an officer as to whether such a crime had actually occurred or would actually occur in the future. They just asked that the officer reasonably believe. And, of course, in these kinds of split-second decisions, there may not always be perfect information available. So I think that just underscores that even in that provision that plaintiff had, at least at one point, been kind of hanging his hat on, discretion is still involved. And certainly in the weighing of the factors, there's no doubt there. Okay. Any further questions? No. All right. Thank you, Ms. Clark, for appearing. Case will be submitted.